IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| DAVID GORDON WALLACE, JR. | § | CASE NO. 15-31594 |
|     Debtor | § | |
| | § | |
| | § | |
| NSJS LIMITED PARTNERSHIP, | § | |
|     Plaintiff | § | |
| VS. | § | ADVERSARY NO. _____ |
| | § | |
| DAVID GORDON WALLACE, JR., | § | |
|     Defendant | § | |

## COMPLAINT IN OBJECTION TO DISCHARGE OF DEBT, 11 USC § 523

NSJS Limited Partnership files this Plaintiff's First Amended Original Complaint in Objection to the Discharge of Debt in accordance with 11 USC § 523 against David Gordon Wallace, Jr. as follows:

## PARTIES

1. Plaintiff NSJS Limited Partnership is a Texas Limited Partnership with offices in McClellan County, Texas.

2. Defendant, David Gordon Wallace, Jr. ("Defendant" or "Wallace") is an individual residing in Harris County, Texas who may be served with summons and a copy of the Complaint in accordance with Federal Bankruptcy Rule 7004(a)(1) or (b)(1) by serving him at his residence, 1634 Brookstone Lane, Sugarland, Texas 77479.

Defendant is the Debtor herein. His bankruptcy counsel Janet Cashiato Northrup. Ms. Cashiato-Northrup will be served with a copy of this Complaint.

1

## JURISDICTION

3. 28 U.S.C. § 1334 grants the United States District Court for the Southern District of Texas jurisdiction over this adversary proceeding. This action has been referred to this Court pursuant to 28 U.S.C. § 157(a), and is brought pursuant to Bankruptcy Rule 7001, 11 U.S.C. § 523(a)(2)(A), (4) and (6) and 11 USC § 523(c).

## CORE PROCEEDING

4. This action is a core proceeding under 28 U.S.C. § 157(b)(A), (I) and (O).

## VENUE

5. Venue is proper before this court under 28 U.S.C. § 1409.

## CONSENT TO FINAL ORDER

6. To the extent necessary, Plaintiff consents to trial of all matters of fact and law and entry of final Judgment by this Court.

## PROCEDURAL HISTORY

7. On March 24, 2015, David Wallace, Debtor filed a voluntary petition for bankruptcy relief under Chapter 7 of the United States Bankruptcy Code.

8. The Section 341 meeting of creditors was original scheduled for April 21, 2015.

9. Pursuant to Federal Bankruptcy Rule 4007(c), objections to dischargeability of debt filed in accordance with 11 USC § 523 must be filed within 60 days of the date first set for the meeting of creditors. That date was June 22, 2015.

10. On June 23, 2015 at docket no. 91, Plaintiff obtained an Order which extended the time within which Plaintiff could file an objection to September 30, 2015.

11. On September 11, 2015, the United States District Court for the Southern District

of Texas issued its Memorandum and Judgment on the appeal by Plaintiff of an order of the Bankruptcy Court in *NSJS Limited Partnership v. Waco Town Square Partners, LP, et al.*, Case No. H-15-0485 reversing the order of the Bankruptcy Court in *In re Waco Town Square Partners, et al.*, Case No. 11-38928-H4-11, docket no. 205.

12. As a result of the United States District Court's decision, Plaintiff has standing to assert the causes of action in this objection to discharge of debt.

**FACTS**

13. In February 1998, Norman Bonnett suffered a debilitating stroke and was rendered unable to handle his affairs. Mr. Bonnett's children, Sherry Bryan, James Bonnett, and Susan Bonnett formed NSJS Limited Partnership ("NSJS"), a family limited partnership, to manage Mr. Bonnett's real estate and to generate income to provide for his care.

14. James Bonnett, NSJS Limited Partnership's general partner, is not a sophisticated businessman. He has no bachelor's degree and had been involved in a total of five (5) real estate transactions prior to the transaction at issue in this cause.

15. In 2006 and 2007, Defendant David Wallace and his development company, Wallace Bajjali Development Partners, LP, secured a ground lease from the City of Waco, Texas to develop downtown property into a mix use commercial and residential development. Defendant contracted with Michael Wray to develop the Waco Town Square project.

16. Defendant and Mr. Wray formed two separate and distinct limited partnerships to own different tracts in the development. Wray and Wallace created Waco Town Square Partners LP ("WTSP") as the entity formed to raise capital and bear the financial risk for the development of the first phase of the property, consisting of commercial units and residential flats. Wray and

3

Wallace separately created Waco Town Square Partners II, LP ("WTSP II") to own and develop a vacant tract adjacent to the development.

17. WTSP and WTSP II were different companies, with different investor groups, owning different tracts of land.

18. Wallace's company, Wallace-Bajjali, owned the ground lease and formally or informally contracted with Wray to develop the property, market the property, and to seek investors.

18. In June 2008, Mr. Wray approached James Bonnett and solicited an investment from NSJS into WTSP, II.

19. Among the representations which were made and which were critical to Mr. Bonnett' s decision to make the investment were the representations that: 1) the new company would not incur any debt until construction. In fact, they actually borrowed money for the acquisition; 2) that Wallace & his company were investing $240,000 cash. In reality, they only contributed the ground lease. This was also reflected in the partnership agreement; and 3) he was told there already prospective tenants who had signed letter of intent for Phase 2.

20. In soliciting NSJS's investment, neither Mr. Wray nor Defendant Wallace disclosed that WTSP was undercapitalized and had incurred debt of more than $7 million to Community Bank & Trust. While WTSP and WTSP II were created as separate entities, they were part of the same development scheme. Defendant knew that this information was extremely important to any prospective investor in either company and would be a crucial factor in the decision to invest in the Defendant's scheme.

21. Defendant had a duty to disclose the true financial status of WTSP and failed to

make this disclosure to Mr. Bonnett.

22. Plaintiff relied upon Defendants' representations as well as the non disclosures in deciding to invest in WTSP.

23. On August 11, 2008, Plaintiff invested $200,000.00 and in exchange received 2,083.33 units in WTSP, II. Plaintiff did not have any ownership interest in the other partnership, WTSP.

24. The Agreement of Limited Partnership of WTSP, II appeared to represent that Defendant Wallace's company was investing cash in the amount of $240,000.00. The Agreement of Limited Partnership was signed by David Wallace on behalf of SWB Heritage Square.

25. On July 13, 2009, more than a year after the purchase, Plaintiff reviewed a copy of the HUD-1 closing statement and learned for the first time that Defendant Wallace's companies did not put any cash into WTSP II. Additionally, in reviewing the HUD-1, Plaintiff learned for the first time that the partnership incurred debt to purchase the development property. Mr. Wray had previously represented to Mr. Bonnett that the company would not incur any debt until construction began.

26. The Agreement of Limited Partnership also provided NSJS with a unique and exclusive right to redeem its interests and receive a full refund of its initial investment plus a Preferred Return of ten percent (10%) per annum. The Agreement further provided that cash or other proceeds from the sale of property would not be available for distributions by the general partner, "except for distributions to NSJS in connection with the redemption of NSJS units..." Accordingly, NSJS not only had a right of redemption, but also had a specific contractual right to

any sales proceeds of partnership property.

27. On June 30, 2010, Defendant Wallace, and Community Bank conspired to "sell" the vacant lot, the only asset owned by WTSP, II, to Community Bank for $539,000.00 (*$181,000.00 less* than what WTSP II originally paid for the property). Wallace and WTSP, II then "lent" the sales proceeds to the other partnership, WTSP, in exchange for an *unsecured note*. WTSP, in turn, paid the money back to Community Bank to be applied to the more than $7 million owed by WTSP. In connection with the sale of the property, the Bank refinanced the indebtedness *owed solely by WTSP* at a lower rate of interest.

28. The refinancing saved Wallace more than $170,000.00 in interest payments and helped Community Bank with its debt ratio but had no benefit to WTSP II, which lost the only asset the company possessed. More importantly, it rendered NSJS's redemption right useless.

29. The net proceeds from the purported sale to Community Bank were more than enough to pay WTSP II's contractual obligation to NSJS, but instead Defendant Wallace paid those sums to Community Bank to help with the development costs incurred by the other company on phase 1 of the development.

31. Defendant controlled the general partner of WTSP and the general partner of WTSP II.

32. Defendant owed a fiduciary duty to Plaintiff.

33. Defendant's actions in causing the "sale" of WTSP II's sole asset to Community Bank for less than market value and then "loaning" the proceeds of the sale to WTSP in the form of an unsecured loan constituted self dealing and a breach of his fiduciary duty to Plaintiff.

34. On July 30, 2010, NSJS exercised this right and tendered its 2,083.33 Units and

demanded payment of its initial investment plus its Preferred Return, which at that time together totaled $239,287.67.

35. Despite NSJS's tender and the terms in the Partnership Agreement, WTSB II failed and refused to redeem NSJS's Units plus its preferred return.

36. Defendant met with Mr. Bonnett and told of the CB&T transaction after the fact and presented him with a document which purported to summarize the transaction between WTSB, WTSB II and Community Bank. A copy is attached hereto as Exhibit "A".

37. Throughout the entirety of the WTSB and WTSB II Defendant was the controlling person. Wray was acting as Wallace's agent and, on information and belief, presented information to Mr. Bonnett about WTSB II at the direction and behest of Defendant.

38. Alternatively, Defendant and Wray conspired to induce Mr. Bonnett into investing in WTSB II.

## FIRST CAUSE OF ACTION
### OBJECTION TO DISCHARGE 11 USC § 542(a)(2)(A)

39. Paragraphs 1 through 38 are incorporated as if set out in whole.

40. Defendant made misrepresentations of material fact and omitted material facts which he had a duty to disclose. The misrepresentations and omissions were made knowingly and intentionally with the intent that Plaintiff rely on them in order to induce Plaintiff to invest in WTSB II. Plaintiff reasonably relied on Defendant and as a direct and proximate result of such reliance was damaged.

41. Plaintiff has been damaged in the amount of $200,000.00 as a direct and proximate result of Defendant's fraudulent actions.

42. Pursuant to the United States Bankruptcy Code, section 523(a)(2)(A), the debt

owed to Plaintiff by Defendant should be exempted from discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) as it is a direct and proximate result of the fraudulent conduct of the Defendant.

## SECOND CAUSE OF ACTION
## OBJECTION TO DISCHARGE 11 USC § 523(a)(4)

43. Paragraphs 1 through 38 are incorporated as if set out in whole.

44. Plaintiff entrusted funds with Defendant. Rather than make us of the funds as promised and agreed, Defendant used them for his own purposes.

45. Defendant occupied a position of trust as he was handling Plaintiff's funds and as he was the controlling person for the general partner of both WTSB and WTSB II.

46. Defendant's misrepresentations and omissions constitute fraudulent conduct, or alternatively, defalcation by the Defendant while acting in a fiduciary capacity.

47. In particular, as a fiduciary, Defendant had a heightened duty of disclosure, absolute honesty and an absolute prohibition against self dealing.

48. The misrepresentations and omissions by Defendant or Defendant's agents constituted fraud while acting in a fiduciary capacity and a breach of his fiduciary duty.

49. Plaintiff has been damaged in the amount of $200,000.00 as a direct and proximate result of Defendant's actions.

50. Pursuant to the United States Bankruptcy Code, section 523(a)(4), the debt owed to Plaintiff by Defendant should be exempted from discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) as it is a direct and proximate result of Defendant's fraud or defalcation while acting in a fiduciary capacity.

## THIRD CAUSE OF ACTION

**OBJECTION TO DISCHARGE 11 USC § 523(a)(4)**

51. Paragraphs 1 through 38 are incorporated as if set out in whole.

52. Defendant occupied a position of trust in the management and care of the assets of WTSB II as he was the controlling person for the general partner of WTSB II.

53. Defendant occupied a position of trust as he was handling Plaintiff's funds and as he was the controlling person for the general partner of both WTSB and WTSB II.

54. In particular, as a fiduciary, Defendant had a heightened duty of disclosure, absolute honesty and an absolute prohibition against self dealing.

55. Defendant's conduct in causing WTSB II to "sell" the only asset it had to Community Bank and then "loan" the sales proceeds to WTSB effectively stripped WTSB II of its sole asset, and rendered Plaintiff's position in WTSB II worthless.

56. Plaintiff has been damaged in the amount of $200,000.00 as a direct and proximate result of Defendant's actions.

57. Pursuant to the United States Bankruptcy Code, section 523(a)(4), the debt owed to Plaintiff by Defendant should be exempted from discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) as it is a direct and proximate result of Defendant's fraud or defalcation while acting in a fiduciary capacity to Defendant.

Wherefore, premises considered, NSJS Limited Partnership requests that the Court enter

its judgment denying the Defendant a discharge of the debt due to Plaintiff as described relief as may be just.

        **Law Office of David W. Anderson**

        /s/ David W. Anderson
        David W. Anderson
        TBN01174350
        Office: 3730 Kirby, Suite 1200-309
               Houston, Texas 77098
        Mail:   P.O. Box 6152
               Kingwood, Texas 77325
        Phone: (713) 868-4411
        Fax: (713) 868-4413
        dwanderson@ralaw.net

# Waco Town Square Partners II, LP

# Effects of June 30, 2010 Transaction

- Current Balance Sheet / Market Value Implications – Based on Cost Valuation, Impairment to Equity Holders is 36.65%. Based on Current Appraised Value (Asking Price), Impairment to Equity Holders is 27.11%. (See December 31, 2009 and June 30, 2010 {estimate} Balance Sheet and Valuation Matrix).

- Goal of Eliminating Impairment to ALL Stakeholders of WTSP II, LP.

- Pre-existing Cross-Default / Cross-pledge situation with Waco Town Square Partners, LP affects ability to sell / develop land.

- Negotiated Purchase & Sale Contract with Community Bank & Trust - $539,000 (See Summary of Land Sale Transaction).

- Negotiated Repurchase Rights (See attached Purchase and Sale Agreement) for WTSP II, LP for 120-days at $539,000 plus Bank's attorney fees ($564,000).

- Propose WTSP, LP to enter into agreement with WTSP II, LP Equity Holders to acquire their equity interest for cost, evidenced by execution of 12-month promissory note (June 30, 2011). Affects will be that cash from sale transaction will be transferred to WTSP, LP, and WTSP, LP will execute promissory notes to WTSP II, LP Equity Holders (See WTSP II, LP & WTSP, LP Balance Sheet effects of transaction).

- Modification of CBT Loan to WTSP, LP to provide for 24-month loan, with interest rate reduction from 6.5% to 4.5%.

EXHIBIT "A"

## WACO TOWN SQUARE PARTNERS II, LP
## BALANCE SHEET

|  | Dec. 31, 2009 | June 30, 2010 Estimate |
|---|---|---|
| **Assets** | | |
| Fixed Assets | | |
|   Land | $726,739 | $726,739 |
| Total Fixed Assets | $726,739 | $726,739 |
| | | |
| Other Assets | | |
|   Architect Fees | $11,109 | $11,109 |
|   Capitalized Interest | $21,530 | $21,530 |
|   Capitalized Overhead | $47,385 | $47,385 |
|   Organizational Costs | $13,832 | $13,832 |
| Total Other Assets | $93,856 | $93,856 |
| | | |
| **Total Assets** | $820,595 | $820,595 |
| | | |
| **Liabilities & Equity** | | |
| Liabilities | | |
|   Accrued Property Taxes | $10,494 | $12,073 |
|   Due to WTSP, LP | $90,101 | $97,901 |
|   Note Payable CBT | $240,000 | $240,000 |
| Total Liabilities | $340,595 | $349,973 |
| | | |
| Equity | | |
|   Equity to be Redistributed | $1,600 | $0 |
|   Michael Wray | $0 | $0 |
|   Kim S. Mason | $28,800 | $28,332 |
|   NSJS Limited Partnership | $200,000 | $196,748 |
|   Paul Skretny | $9,600 | $9,444 |
|   SWB Heritage Square Partners, LL | $240,000 | $236,098 |
| Total Equity | $480,000 | $470,621 |
| | | |
| **Total Liabilities & Equity** | $820,595 | $820,595 |

| **Valuation Analysis** | **AT COST** | **ASKING PRICE** |
|---|---|---|
| Property Valuation Estimates | $726,739 | $770,000 |
| Less - Selling Costs @10% | $72,674 | $77,000 |
| Net Liquidation Value | $654,065 | $693,000 |
| | | |
| Less - Liabilities - As of June 30, 201 | $349,973 | $349,973 |
| **Net Cash for Distribution** | **$304,092** | **$343,027** |
| | | |
| **Liquidation Impairment to Equity** | **36.65%** | **27.11%** |

EXHIBIT "A"

# WACO TOWN SQUARE PARTNERS II, LP
## Summary of June 30, 2010 Sale Transaction

|  |  | Reference |
|---|---:|---:|
| **Buyer's Statement** |  |  |
| WTSP II Sale to Community Bank | $539,000.00 | Contract |
| Less - 2010 Tax Proration | -$5,266.29 | Closing Statement |
| Add - Mortgagees Policy | $3,334.27 | 4213563444 |
| **Total Cash Needed for Closing** | **$537,067.98** |  |
| **Seller's Statement** |  |  |
| WTSP II Sale to Community Bank | $539,000.00 | Contract |
| Less - 2010 Tax Proration | -$5,266.29 | Closing Statement |
| Less - Recording Fees | -$19.00 | 4213563446 |
| Less - Loan Payoff - CBT | -$240,650.00 | 4213563442 |
| Less - Payoff Delinquent 2009 Taxes | -$11,690.95 | 4213563443 |
| Less - Repurchase Earnest Money | -$500.00 | 4213563441 |
| **Net Cash to Seller** | **$280,873.76** | 4213563439 |

EXHIBIT "A"