UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **DAVID GORDON WALLACE, JR.** | § | Chapter 7 Case 15-31594 |
| *Debtor* | § | |
| | § | |
| BRYAN STANLEY | § | |
| Plaintiff | § | |
| v. | § | |
| **DAVID GORDON WALLACE, JR.** | § | Adv. No. _____ |
| *Defendant* | § | |
| | § | |

## BRYAN STANLEY'S ORIGINAL COMPLAINT FOR JUDGMENT AND DETERMINATION OF DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C.§523

Plaintiff BRYAN STANLEY ("Plaintiff" or "Stanley") files this Adversary Complaint for judgment on a debt and to determine non-dischargeability of such debt pursuant to 11 U.S.C. §§ 523(a)(2) against David Gordon Wallace, Jr., the Chapter 7 Debtor (hereinafter, "Debtor" or "Wallace" or "Defendant") and in support of this Adversary Complaint, Plaintiff  would show the Court as follows:

### JURISDICTION

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157 (I) and (J). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

2.  The statutory predicate for the relief requested herein is section 523 of title 11 of the United States Code ("Bankruptcy Code").

### RULE 7008 AND LBR 7008-1 STATEMENT

3.  This   proceeding is a core proceeding that seeks a determination that the claim of Plaintiff is not discharged under 11 U.S.C.§523 and may be a non-core

proceeding as it further seeks judgment for Plaintiff's claim. In the event that any part of the claim made part of this Complaint is determined by the bankruptcy judge to be non-core, the Plaintiff consents to entry of final orders or judgment by the bankruptcy judge, if it is determined by the bankruptcy judge that, absent consent of the parties, he cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## PARTIES

4.  The Plaintiff is an individual residing in this District.

5.  The Defendant is the Debtor in the related bankruptcy proceeding and is a resident and citizen of the State of Texas and upon information and belief resides in Fort Bend County, Texas. The Defendant can be served at the address listed in his Schedules (1634 Brookstone Lane, Sugar Land, Texas 77479) with a copy served on his attorney of record in the bankruptcy proceeding, Janet S Casciato-Northrup, Law Offices of Janet S. Northrup, P.C., 333 Clay St., Suite 2835, Houston, Texas 77002.

6.  Wallace was an owner, chief executive officer and president of an entity known as  WB Real Estate Holdings, LLC, a Texas limited liability company ("WB") that has filed a petition under Chapter 7, that is pending in this District under Bankruptcy Case No. 15-31770.  Wallace resigned from such entity on January 2015.

## BACKGROUND

7. Plaintiff is the former next door neighbor of Wallace, each having purchased homes in the Sweetwater subdivision in Fort Bend County, Texas in year of 2005.

8.  In 2009 Wallace approached Plaintiff and informed the Plaintiff that his real estate business firm was having some difficulties as a result of the 2008 financial crisis and that he would offer very favorable terms on a $2.5 million loan backed

by his personal guaranty.   Wallace advised Plaintiff that the WB portfolio of property was independently valued at over $380,000,000.   Wallace further represented that because of his personal guaranty, any loan Plaintiff made would make him a first tier creditor, only behind current banks and ahead of any investors, guaranteed to be timely paid.

9.  In response to Wallace's proposal, Plaintiff loaned the  sum of One  Million Six  Hundred Thousand and no/100 Dollars ($1,600,000.00, the "Loan Amount") to WB, an entity purportedly owned by Wallace and his business partner, under the terms of a loan agreement dated December 2, 2010.   A true and correct copy of the promissory note is attached as Exhibit "A" ("Note")  and a true and correct copy of the loan agreement is attached as Exhibit "B" ("Loan Agreement"). The  subject  loan  transaction  was  personally  guaranteed  by Wallace.  A true and correct copy of the personal guaranty is attached hereto as Exhibit "C" ("Personal Guaranty"). The loan, as extended and renewed through First and Second Modification Agreements, has not been repaid and is in default. Together, all instruments are referred to as the "Loan Documents."  Plaintiff, without waiving or abandoning his collateral rights, nor in derogation of his collateral interests in and to the secured property, seeks actual damages for the principal sum under the Note and the Loan Agreement of $1,600,000.00 plus interest thereon, all past-due loan payments plus interest thereon, as well as enforcement of all obligations under the Guaranty. Plaintiff also seeks his attorneys' fees, court costs and pre-judgment- and post-judgment interest. Plaintiff also seeks a determination that the Personal Guaranty of the loan by Wallace creates a non-dischargable debt in the bankruptcy case filed by Wallace.

**THE DEBT**

10. **The Loan Agreement.** Plaintiff loaned the Loan Amount to WB under the terms of the Loan Agreement dated December 2, 2010 for a term of thirty (30) months while Defendant Wallace served as a Manager of WB.

11. Under the Loan Agreement's terms, WB as Borrower and Wallace as Guarantor jointly and individually agreed to the terms of the Loan Agreement. Specifically, the Loan Agreement is subject to the terms of the Note and of the Pledge Agreement.  Plaintiff was entitled to ten percent (10%) of cash available for distribution to Members of WB for a period of fifteen (15) years after December 2, 2010 and as extended by the Modification Agreements referenced herein after. The Loan Amount was to be used solely for the purposes set forth in the Loan Agreement.

12. **The Secured Promissory Note**. The Note was due and payable for its principal balance of $1.6 million dollars thirty months after December 2, 2010, as extended to December 31, 2015 by the Second Modification Agreement. Original interest payments at a rate of seven percent (7%) per annum were due each month. The Note provides for a twelve percent (12%) rate of interest, or the maximum rate allowed by law, after maturity. This instrument was extended, renewed and modified by the Modification Agreements and has now matured.

13. **The Pledge Agreement**. Concurrent with the execution of the Loan Agreement and the Note, WB executed the Pledge Agreement, which provides a secured interest collateral position to Plaintiff in and to 35 specific interests in the following entities:   (1) Creekmont Plaza Partners GP, LLC, a Texas limited liability company; (2) Creekmont Plaza Partners, LP, a Texas limited partnership ; ( 3) Lakecrest Village Investment, LLC, a Texas limited liability company; (4) Meadow Crest Developers GP, L.L.C., a Texas limited liability company; (5) Morton & Mason Partners GP, LLC, a Texas limited liability company ; ( 6)-

Morton & Porter GP, LLC, a Texas limited liability company ;(7)- Morton & Porter, L.P., a Texas limited partnership; (8)-Riata West Investment, LLC, a Texas limited liability company; (9)- Spring Cypress Investments GP, LLC, a Texas limited liability company; (10)- Meadow Crest Developers 226, L.P., a Texas limited partnership; (11)- Spring Morton, L.P., a Texas limited partnership; (12)- SWB Waco SH GP, LLC, a Texas limited liability company ; (13)- Waco Student Housing Equity GP, LLC, a Texas limited liability company ; (14)- Waco Student Housing Equity, LP, a Texas limited partnership; (15)- WB 2610, LLC, a Texas limited liability company; (16)- WB Sam Houston, LLC, a Texas limited liability company; (17)- WB Chancel Development Partners, L.P., a Texas limited partnership; (18)- WB Chancel GP, LLC, a Texas limited liability company;(19)- WB Sanctuary Development Partners, L.P., a Texas limited partnership; (20)- WB Sanctuary GP, LLC, a Texas limited liability company ;(21)- WB White Oak Lake Development, L.P., a Texas limited partnership; (22)- White Oak Lake GP, LLC, a Texas limited liability company; (23)-WB Murphy Road Development, LLC, a Texas limited liability company; (24)-ZT Group Business Center One (Pearland), L.P., a Texas limited partnership; (25)- Hampton Pointe Holdings, LLC, a Texas limited  liability  company; (26)-SWB Waco  SH, L.P.,  a Texas limited partnership; (27)- Motion & Mason Partners, L.P., a Texas limited partnership, and; (28)- Spring Cypress Investments, L.P., a Texas limited partnership ("Pledged Entities").

14. Upon certain specified "Events of Default", Plaintiff had rights and remedies of a secured party in default under the UCC (Texas Business and Commerce Code). An Event of Default as tied to section 7 of the Loan Agreement, specifically includes non-payment of any liability that is not cured within ten (10) days after receipt by Borrower of written notice thereof from Plaintiff-Lender.

15. The Guaranty provides that the obligations under the combined transaction Loan Documents, including the Loan Agreement, Note, Pledge Agreement and Modification Agreements is the individual obligation of Defendant Wallace.

16. **The Modification and Extension of Note and Lien dated to be effective June 2, 2013 (the "First Modification")**. Upon nonperformance or anticipatory repudiation of the loan documents, Plaintiff-Lender and WB-Borrower entered into the First Modification, which provided that the Note would become due and payable on June 2, 2014. Additionally, among other matters, the First Modification provided that monthly interest installments would continue during the Extended Term. The First Modification also increased the interest rate on the unpaid principal to 9.5% or the maximum rate allowed by law. The First Modification fully ratified all loan documents to date.

17. **The Modification and Extension of Note and Lien dated to be effective June 2, 2014 (the "Second Modification")**. Upon nonperformance or anticipatory repudiation of the loan documents, Plaintiff-Lender and WB-Borrower entered into the Second Modification, which provided that the Note would become due and payable on December 31, 2015. Additionally, among other matters, the Second Modification provided for 19 monthly installments of accrued interest at 9.5% per annum or the maximum legal rate of interest allowed by law while ratifying all loan documents.  The Second Modification was agreed and executed in August 2014 and made effective June 2, 2014.

18. **Default by Borrower and Notice to Borrowers and Guarantors**. On or about March 3, 2015, counsel for Plaintiff sent a notice letter to WB and to Defendant Wallace, advising of default for non-payment under the Note for the months of October-December, 2014 and January-March of 2015. Since that time,

neither WB nor Defendant made efforts to contact Plaintiff or his legal counsel, nor have they paid the amounts owing under the Note.

19. All loan documents, including the Loan Agreement, Note, Pledge Agreement, Personal Guaranty, First Modification and Second Modification provide (a) that no demand, protest or notice is otherwise required; (b) for the payment of attorneys' fees and costs to Plaintiff for any action occasioned by any default; and (c) that Defendant as guarantor waived all rights to a trial by jury.

20. On March 24, 2015, the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code.

21. On April 2, 2015 WB filed a voluntary petition under chapter 7 of the Bankruptcy Code and the WB bankruptcy case was administratively consolidated under case 15-31305 together with the chapter 7 cases of WB Murphy Road Development, LLC., Creekmont Plaza Partners, L.P., Creekmont Plaza Partners GP, LLC., Replacement Sanctuary GP, LLC, WB Sanctuary GP, LLC, WB Chancel GP, LLC, WB 2610, LLC, Meadow Crest Developers 226, L.P., Meadow Crest Developers GP, LLC, Morton & Porter, L.P., Morton & Porter GP, LLC, Riata West Investment, LLC, Lakecrest Village Investments, LLC, WB Real Estate Holdings, LLC, US Public - Private Real Estate Fund I, LP, Wallace Bajjali Investment Fund II, LP, West Houston WB Realty Fund, LP, WBIF II GP, LLC, WB Substitute GP, LLC,  and PPP Management, LLC.  (hereinafter "Investment Entities").

## FALSE REPRESENTATIONS BY WALLACE

### FALSE REPRESENTATIONS REGARDING PORTFOLIO OWNERSHIP

22.  Prior to the advance by Plaintiff to Wallace, Wallace told Plaintiff that his Personal Guaranty was backed by his interest in WB which held a substantial real estate portfolio exceeding $380,000,000 ("Portfolio") and the Loan would be a first tier creditor, only subordinate to bank loans.

23.  Wallace represented that he individually was a joint partner with Costa Bajjali ("Bajjali") in WB, which owned the Pledged Entities provided to Plaintiff as security for the Loan. Actually, Plaintiff has discovered that Wallace was only an officer or director of such entity and not an owner.  In its statement of financial affairs, WB reports that he is not a shareholder, but an officer or director who terminated his association with WB in January 2015.

24.  In the Official Statement of Financial Affairs filed in his bankruptcy case [Docket #20], Wallace lists over 100 business entities and indicates that he has "no ownership" in every entity except for a handful of entities scheduled with partial ownership and having virtually no value[1].

25.  Notwithstanding the foregoing, Wallace failed to advise the Plaintiff that he did not actually own an interest in WB or the Pledged Entities that he implied would stand to support his Personal Guaranty of the Loan.  Had Plaintiff been told the truth about the ownership of the Portfolio, he would not have loaned the funds without the personal guaranty of the true owners of WB.  On March 24, 2015 Wallace filed chapter 7 bankruptcy and scheduled his interest in business entities at $100,000, quite a bit short of the $380,000,000 value that Plaintiff relied on in making the Loan.

26.  Wallace took advantage of the Plaintiff, his neighbor, with the knowledge that his complicated business structure would effectively support his misrepresentations and intent to defraud Plaintiff. The Defendant intended to create and develop the false impression that caused Plaintiff to advance funds, all when Defendant knew that such representation were not true.

---

[1] Wallace did schedule a 33 1/3 % interest in "Rink Operations Management, LLC" with a value he estimates as $100,000.  Apparently, this entity owns a 20% interest in Sugar Land Entertainment Enterprises, LP.. However the other entities are scheduled with no value.

27. The Plaintiff relied on the representation of Wallace that his Personal Guaranty was supported by his ownership WB with its Portfolio and has now been damaged by the failure to collect the Loan that is due.

28. Although Plaintiff requested evidence of the financial health of WB prior to extending the Loan in 2014, Wallace did not provide such evidence, but rather represented that WB was a healthy financial entity and made no disclosure about the lack of cash flow and other business problems that existed at the time, including dismissal of most of his employees and the lingering problems with the Commission. Wallace advised Plaintiff that his business was operating as smoothly and as strong as ever, that the Joplin development was a huge success and he was getting tremendous interest from other communities due to what was being done in Joplin, Amarillo, Sugar Land and Waco.  Wallace did not suggest that these endeavors had cash flow challenges.   If provided with accurate knowledge of the foregoing facts, Plaintiff would not have extended and renewed the Note.

29. Wallace acted with the knowledge that Plaintiff would rely on his representations and would not have extended the Loan with the knowledge that was withheld.

**FALSE REPRESENTATIONS REGARDING S.E.C. ACTIONS**

30.  Wallace failed to disclose that prior to the Loan Agreement signed in 2010, that he and related entities were under investigation by the the Securities and Exchange Commission (the "Commission"). On November  13, 2009 the Commission had commenced the enforcement action SECURITIES AND EXCHANGE COMMISSION v. ALBERT FASE KALETA AND KALETA CAPITAL MANAGEMENT, INC., DEFENDANTS, AND BUSINESSRADIO NETWORK, LP. d/b/a BIZRADIO AND DANIEL FRISHBERG FINANCIAL SERVICES, INC. d/b/a/

OFFS CAPITAL MANAGEMENT, INC.,RELIEF DEFENDANTS, SOLELY FOR THE PURPOSES OF EQUITABLE RELIEF, Civil Action No.4:09-cv-03674, in the United States District Court for the Southern District of Texas, Houston Division ( "First SEC Action").

31.   In 2009, a receiver was appointed in the First SEC Action ("Receiver") and beginning in July 2010, prior to the execution and funding under the Loan Agreement, the Receiver began negotiations with Wallace and the Pledged Entities concerning loans and related promissory-note securities. If provided with this knowledge, Plaintiff would not have made the loan that is the subject of this Adversary Proceeding.

32.   Wallace failed to disclose to Plaintiff prior to the First Modification renewal and extension that in August 2011 the district court approved an agreed judgment, executed by Wallace and other parties providing for the execution and personal guaranty of substantial debts by Wallace to the Receiver ("First Settlement").   The First Settlement required Wallace to direct dedicated cash flows to the Receiver from one or more of the Pledged Entities. This was the same cash flow that Wallace represented would be paid to Plaintiff on the Loan. Wallace knew he should have disclosed these facts to Plaintiff and knew that Plaintiffs knowledge of the First Settlement would have caused the Plaintiff not to further extend credit to Wallace and his entity. If provided with this knowledge, Plaintiff would not have extended and renewed the Note.

33.   Subsequently, the Commission filed an enforcement action against Wallace styled *SEC v. Wallace et al., No. 4:11-cv-01932, in the United States District Court for the Southern District of Texas, Houston Division.* ("Second SEC Action"). The district court in this action ultimately entered Agreed Final Judgments against Wallace permanently enjoining him from future violations of security laws and imposing on civil penalty of $60,000.00 ("Second Settlement").

Wallace knew he should have disclosed these facts to Plaintiff and knew that Plaintiffs knowledge of the Second Settlement would have caused the Plaintiff not to further extend credit to Wallace and his entity. If provided with this knowledge, Plaintiff would not have extended and renewed the Note.

34. Wallace had represented from a time prior to the Loan that it would be paid by a 10% distribution of free cash flows, but failed prior to renewal of the Loan, to advise Plaintiff that the Commission judgment diverted such payments. Wallace knew he should have disclosed these facts to Plaintiff and knew that Plaintiffs knowledge of such facts would have caused the Plaintiff not to further extend credit to Wallace and his entity.  If provided with this knowledge, Plaintiff would not have extended and renewed the Note.

35. Alternatively, Wallace voluntarily disclosed some, but not all, material facts regarding the the ongoing S.E.C. actions and failed to disclose the entry of the judgments rendered by the Court on the S.E.C. actions that changed any initial representations of such actions.   Wallace had knowledge of such judgments, knew that Plaintiff lacked such knowledge, and had a duty to disclose such to Plaintiff prior to renewal of the Loan.  Wallace knew that Plaintiff would not have made the loan or renewed the Loan if he had such knowledge.  A reasonable person in Plaintiff's place would not have made the Loan or renewed the Loan with notice of entry of the judgments.

36. Wallace failed to disclose the existence of the S.E.C. actions with the knowledge that any disclosure would cause Plaintiff not to loan money and not renew the Loan.

37. The foregoing misrepresentations and failure to disclose what a reasonable person in Plaintiff's position would expect under the transactions described, evidence an intent by Wallace to harm Plaintiff.

38. Plaintiff relied on the Debtor's failure to disclose the S.E.C. actions and has been damaged in the amount of at least $1.6 million dollars.

39. This fact pattern forms the basis of the causes of action set forth herein after. All conditions precedent to Plaintiff's claims for relief have been performed or have occurred.

## BASIS FOR RELIEF

40. Plaintiff funded the loan for $1,600,000.00 and otherwise fully performed his obligations. Defendant Wallace entered into the Personal Guaranty for the purposes and consideration therein expressed. Plaintiff fully performed thereunder as to his obligations. WB defaulted on its obligations under the Loan Documents, specifically including the Loan Agreement, Note and First and Second Modification Agreements and did not cure the breach/default by WB when requested to do so, thereby triggering the obligations of Wallace under the Personal Guaranty. Such default and non-payment by Defendant caused damage to Plaintiff. Without abandoning its collateral rights, Plaintiff seeks a judgment against Defendant Wallace for the $1,600,000.00 Loan Amount, plus all past due monthly payments on the loan interest up through and including the time of trial. Plaintiff seeks post-default interest on the Loan Amount at the rate specified in the Second Modification Agreement or the highest rate allowed by law, whichever is less. Plaintiff seeks its attorneys' fees, pre-judgment and post-judgment interest.

41. Pursuant to 11 U.S.C.A. § 523(a), in accordance with the factual statements in paragraphs 1-39, the claim of Plaintiff is not discharged in this bankruptcy proceeding as

(2) money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--

(A) false pretenses, a false representation, or actual fraud for the reason that …

(1) the Debtor made representations or or failed to disclose a material fact within his knowledge to the plaintiff;

(2) at the time they were made the Debtor knew they were false or knew that Plaintiff would rely on non-disclosure of a material fact;

(3) the Debtor made the representations with the intention and purpose to deceive the Plaintiff;

(4) the Plaintiff justifiably relied on such representation; and

(5) the Plaintiff sustained losses as a proximate result of the representations.

42. Defendant has committed fraud by omission or non-disclosure by the concealment or failure to disclose a material fact within his knowledge, the S.E.C. actions, to the Plaintiff with the knowledge that the Plaintiff was ignorant of the fact and does not have an equal opportunity to discover the truth.  The Defendant intended to induce the Plaintiff to make a loan by concealing or failing to disclose the fact and the Plaintiff suffered a loss as a result of acting without that knowledge.

43. Defendant misrepresented his ownership of the Pledged Entities which were a material fact within his knowledge at the time of the Loan to the Plaintiff, with the knowledge that the Plaintiff was ignorant of the fact and does not have an equal opportunity to discover the truth.  The Defendant intended to induce the Plaintiff to make a loan by concealing or failing to disclose the fact and the Plaintiff suffered a loss as a result of acting without that knowledge.

44. Defendant made misrepresentations of material fact and omitted material facts which he had a duty to disclose.  The misrepresentations and omissions were made knowingly and intentionally with the intent that the Plaintiff rely on

them in order to induce Plaintiff to loan money, renew such loan and extend the terms of such loan.  Plaintiff reasonably relied on Defendant in the aforesaid loan and as a direct and proximate result of such reliance was damaged.

   **WHEREFORE,** Stanley respectfully requests that the Court enter judgment as provided by the Defendant's Personal Guaranty for the Loan Amount of $1,600,000.00, plus interest up through and including the time of trial plus attorneys fees and cost; determine that such judgment is not  discharged pursuant to §§ 523 of the Bankruptcy Code, and granting such other and further relief as is just and proper.

Dated:  September 30, 2015.

                                   **LAW OFFICE OF PETER JOHNSON**

                                   */s/ Peter Johnson*

                         By: _____
                                   Peter Johnson
                                   State Bar No. 10778400
                                   Eleven Greenway Plaza, Suite 2820
                                   Houston, Texas  77046
                                   pjohnson@pjlaw.com
                                   Telephone (713) 961-1200
                                   Facsimile (713)  961-0941
                                   ATTORNEY FOR BRYAN STANLEY