## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **DAVID GORDON WALLACE, JR.,** | § | **CASE NO. 15-31594** |
| Debtor. | § | |
| | § | **(CHAPTER 7)** |
| **ZT WEALTH DEVELOPMENT, L.P.** | § | |
| Plaintiff, | § | |
| | § | **Adversary No. 15-03242** |
| v. | § | |
| | § | |
| **DAVID GORDON WALLACE, JR.,** | § | |
| Defendant. | § | |
| | § | |
| | § | |
| **RODENY TOW, CHAPTER 7** | § | |
| **TRUSTEE.** | § | |
| Plaintiff-Intervenor, | § | |
| | § | |
| v. | § | |
| | § | |
| **ZT WEALTH DEVELOPMENT, L.P.** | § | |
| **COSTA BAJJALI, TASEER A. BADAR,** | § | |
| **ALTUS HEALTHCARE** | § | |
| **MANAGEMENT L.P., ALTUS HMS II** | § | |
| **L.P., ALTUS HOSPICE OF HOUSTON** | § | |
| **L.P., ALTUS MEDICAL EQUIPMENT &** | § | |
| **SERVICES L.P., ALTUS RADIATION** | § | |
| **BILLING & MANAGEMENT L.L.P.,** | § | |
| **ALTUS RADIATION ONCOLOGY** | § | |
| **(BAYTOWN) L.P., CLARUS BILLING &** | § | |
| **MANAGEMENT L.P., CLARUS** | § | |
| **IMAGING (BAYOTOWN) L.P.,** | § | |
| **CLARUS IMAGING (BEAUMONT) L.P.,** | § | |
| **TRUE VIEW REALTY PARTNERS ONE** | § | |
| **L.P., TRUE VIEW REALTY PARTNERS** | § | |
| **TWO L.P., TRUE VIEW REALTY** | § | |
| **PARTNERS THREE L.P., ZT GROUP** | § | |
| **BUSINESS CENTER ONE (PEARLAND)** | § | |
| **L.P., AND ZT SHADOW CREEK** | § | |
| **PARTNERS L.P.** | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF-INTERVENOR'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE, JEFF BOHM:**

COMES NOW, Rodney Tow, the chapter 7 Trustee (the "Trustee") of the estate of David Gordon Wallace, Jr. (The "Debtor" or "Wallace"), and files this Complaint against ZT Wealth Development, L.P., Costa Bajjali, Taseer A. Badar, Altus Healthcare Management L.P., Altus HMS II L.P., Altus Hospice of Houston L.P., Altus Medical Equipment Services L.P., Altus Radiation Billing & Management L.L.P., Altus Radiation Oncology (Baytown) L.P., Clarus Billing & Management L.P., Clarus Imaging (Baytown), L.P., Clarus Imaging (Beaumont), L.P., True View Realty Partners One L.P., True View Realty Partners Two L.P., True View Realty Partners Three L.P., ZT Group Business Center One (Pearland) L.P., and ZT Shadow Creek Partners L.P. (collectively, the "Defendants"), and would show the Court the following:

### JURISDICTION AND VENUE

1.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157 because the claim arises in and is related to Wallace's bankruptcy proceeding (the "Bankruptcy Case").

2.       This is a "core" proceeding under 28 U.S.C. §§ 157(b)(2)(A), (H), and/or (O).

3.       This Court may enter final judgment or propose findings of fact and conclusions of law in this action.  28 U.S.C. § 157(b)(1); *Stern v. Marshall*, 131 S. Ct. 2594, 2620 (2011).

4.       Venue is proper in this Court under 28 U.S.C. § 1409(a).

### PARTIES

5.       Plaintiff is Rodney Tow, the duly authorized and acting chapter 7 trustee of the estate of David Gordon Wallace, Jr.

6.     Defendant Costa Bajjali, an individual and a citizen of the State of Texas, to be served personally.

7.     Defendant Taseer A. Badar, an individual and a citizen of the State of Texas, to be served personally.

8.     Defendant ZT Wealth Development, L.P. is a Texas limited partnership and may be served with process through its registered agent Taseer A. Badar at 11233 Shadow Creek Parkway, Suite 313, Pearland, Texas 77584.

9.     Defendant Altus Healthcare Management L.P. is a Texas limited partnership and may be served with process through its registered agent Taseer A. Badar, 11233 Shadowcreek Parkway, Suite 323, Pearland, TX 77584.

10.     Defendant Altus HMS II L.P. is a Texas limited partnership and may be served with process through its registered agent Taseer A. Badar, 11233 Shadowcreek Parkway, Suite 323, Pearland, TX 77584.

11.     Defendant Altus Hospice of Houston L.P. is a Texas limited partnership and may be served with process through its registered agent Taseer A. Badar, 11233 Shadowcreek Parkway, Suite 323, Pearland, TX 77584.

12.     Defendant Altus Medical Equipment Services L.P. is a Texas limited partnership and may be served with process through its registered agent Taseer A. Badar, 11233 Shadowcreek Parkway, Suite 323, Pearland, TX 77584.

13.     Defendant Altus Radiation Billing & Management L.L.P. is a Texas limited liability partnership and may be served with process through its registered agent Taseer A. Badar, 4265 San Felipe, Suite 1100, Houston, TX 77027.

14.     Defendant Altus Radiation Oncology (Baytown) L.P. is a Texas limited partnership and may be served with process through its registered agent Taseer A. Badar, 4265 San Felipe, Suite 1100, Houston, TX 77027.

15.     Defendant Clarus Billing & Management L.P. is a Texas limited partnership and may be served with process through its registered agent Taseer A. Badar, 4265 San Felipe, Suite 1100, Houston, TX 77027.

16.     Defendant Clarus Imaging (Baytown) L.P. is a Texas limited partnership and may be served with process through its registered agent Taseer A. Badar, 4265 San Felipe, Suite 1100, Houston, TX 77027.

17.     Defendant Clarus Imaging (Beaumont) L.P. is a Texas limited partnership and may be served with process through its registered agent Taseer A. Badar, 11233 Shadowcreek Parkway, Suite 323, Pearland, TX 77584.

18.     Defendant True View Realty Partners One L.P. is a Texas limited partnership and may be served with process through its registered agent Taseer A. Badar, 4265 San Felipe, Suite 1100, Houston, TX 77027.

19.     Defendant True View Realty Partners Two L.P. is a Texas limited partnership and may be served with process through its registered agent Taseer A. Badar, 11233 Shadowcreek Parkway, Suite 323, Pearland, TX 77584.

20.     Defendant True View Realty Partners Three L.P. is a Texas limited partnership and may be served with process through its registered agent Taseer A. Badar, 4265 San Felipe, Suite 1100, Houston, TX 77027.

21.     Defendant ZT Group Business Center One (Pearland) L.P. is a Texas limited partnership and may be served with process through its registered agent Taseer A. Badar, 4265 San Felipe, Suite 1100, Houston, TX 77027.

22.     Defendant ZT Shadow Creek Partners L.P. is a Texas limited partnership and may be served with process through its registered agent Taseer A. Badar, 4265 San Felipe, Suite 1100, Houston, TX 77027.

## INTRODUCTION

23.     The Trustee brings this Complaint against the Defendants to recover the value of property that was fraudulently transferred from the Debtor, to recover for damages suffered by the Debtor due to breach of contract, and to recover for damages suffered by the Debtor due to tortious interference.

## FACTUAL BACKGROUND

### A.  Summary

24.     Defendant Bajjali, a business partner of Wallace, the Debtor, wrongfully breached his contractual obligations to comply with the buy-sell provisions of his partnership agreement with Wallace. This breach, along with other tortious actions by Bajjali, resulted in irreparable harm to Wallace.

25.     Defendants ZT Wealth Development, L.P., Altus Healthcare Management L.P., Altus HMS II L.P., Altus Hospice of Houston L.P., Altus Medical Equipment Services L.P., Altus Radiation Billing & Management L.L.P., Altus Radiation Oncology (Baytown) L.P., Clarus Billing & Management L.P., Clarus Imaging (Baytown), L.P., Clarus Imaging (Beaumont), L.P., True View Realty Partners One L.P., True View Realty Partners Two L.P., True View Realty Partners Three L.P., ZT Group Business Center One (Pearland) L.P., and ZT

Shadow Creek Partners L.P.,  entities Wallace worked for and had equity ownership interest in, wrongfully paid far less than reasonably equivalent value for Wallace's equity ownership interests in ZT Wealth Development, L.P. and its related entities.

26.     Defendant Badar, was the subsequent transferee of fraudulent transfers from the Debtor to ZT Wealth Development, L.P. and its related entities.

**B.  ZT Wealth Equity Ownership Interest**

27.     ZT Wealth Development, L.P. ("ZT Wealth") is a part of the family of companies that includes Altus Healthcare Management L.P., Altus HMS II L.P., Altus Hospice of Houston L.P., Altus Medical Equipment Services L.P., Altus Radiation Billing & Management L.L.P., Altus Radiation Oncology (Baytown) L.P., Clarus Billing & Management L.P., Clarus Imaging (Baytown), L.P., Clarus Imaging (Beaumont), L.P., True View Realty Partners One L.P., True View Realty Partners Two L.P., True View Realty Partners Three L.P., ZT Group Business Center One (Pearland) L.P., and ZT Shadow Creek Partners L.P. (together the "ZT Wealth Entities").

28.     Taseer Badar ("Badar") is an entrepreneur, real estate developer, and CEO of the ZT Wealth Entities. Wallace has known Badar since at least 2004. In 2004, Badar was beginning to establish the businesses that would become the ZT Wealth Entities. Badar approached Wallace and asked Wallace to assist him with building and growing the ZT Wealth Entities.

29.     From 2004 to 2014 Wallace worked with Badar in a variety of capacities to establish the ZT Wealth Entities. Wallace negotiated business deals, advised Badar on real estate transactions, and generally counseled Badar on developing his business. In addition to the foregoing contributions, Wallace worked on behalf of the ZT Wealth Entities in his capacity as a public figure. This work consisted of, among other tasks, attending city council meetings to

lobby on behalf of the partnerships to obtain economic incentives for the real estate and building projects that the partnerships were undertaking.

30.     Wallace spent extensive amounts of time during this period engaged in developing the ZT Wealth entities. In exchange for Wallace's work, the ZT Wealth Entities compensated Wallace by granting equity security interests in the ZT Wealth Entities as they were developed (the "ZT Wealth Equity Interests"). Wallace accepted the ZT Wealth Equity Interests in exchange for his services in lieu of a salary or other compensation because Badar represented to him that the ZT Wealth Equity Interests were ongoing equity interests that would increase in value over time.

31.     Each time a new entity was created, Badar would send a messenger to Wallace's office to collect Wallace's signature page for the business entities' governance documents (company agreement and limited partnership agreements, as applicable).  Wallace was not given a copy of the governance document he was executing and despite requesting copies from Badar, Wallace never received executed versions of the ZT Wealth Entities' governance documents.

32.     Wallace received regular disbursements from the ZT Wealth Equity Interests. The amounts of each disbursement varied and grew over time as the entities became more profitable. During the years he worked on behalf of the ZT Wealth Entities, Wallace's level of responsibility remained relatively constant.

33.     At no point did Wallace execute a power of attorney or give any other authority to Badar to sign legal documents on his behalf.

34.     None of the governance documents presented to Wallace included a redemption provision whereby the ZT Wealth Entities could redeem the ZT Wealth Equity Interests without cause. Additionally, Badar never informed Wallace that the governance documents affecting

Wallace's interest in the ZT Wealth Entities were ever amended to include redemption provisions. Wallace would not have accepted the equity as compensation if he had been aware that the redemption provisions existed.

35.     The ZT Wealth Equity Interests generated distributions that increased over time and by the end of 2014, the ZT Wealth Equity Interests were generating distributions to Wallace of approximately $2,000 per month.

**C.  Wallace Bajjali Buy-Sell Offer**

36.     In November of 2006, Wallace and Costa Bajjali ("Bajjali") entered into a partnership agreement, creating the real estate development partnership Wallace Bajjali Development Partners, L.P. ("WBDP").

37.     Under the terms of the Limited Partnership Agreement of WBDP, dated November 17, 2006 ("WBDP Agreement"), a partner had the right to give notice to another partner setting forth an offer to purchase the units of the partner receiving the offer ("Buy-Sell Provision"). The WBDP Agreement is attached hereto as Exhibit A and incorporated by reference

38.     In December of 2014, Badar told Wallace that the value of his interests in the twenty-four business entities was worth at least $500,000. In reliance on these representations, Wallace borrowed $200,000 from Badar and certain of his affiliates to fund the buyout of Bajjali's ownership interest in WBDP, Bajjali and Wallace's real estate development partnership. The borrowing was memorialized in a promissory note (the "Promissory Note"). Wallace granted a security interest in the ZT Wealth Equity Interests to secure his repayment obligation. Because of Badar's representations, Wallace believed the loans were fully secured.

39.     ZT Wealth entered into a memorandum of understanding (the "ZT Development MOU") with Wallace whereby after the completion of the buyout, WBDP would enter into a partnership with ZT Wealth to develop real estate projects. The partnership was to be called ZT Development, L.P. ("ZT Development"). Pursuant to the terms of the agreements between ZT Wealth and Wallace, Wallace was to be an officer of the new partnership and receive a salary of $20,000 per month for his services.

40.     The formation of this new partnership was contingent upon Wallace successfully purchasing Bajjali's ownership interest in WBDP.

41.     In the second half of 2014, Wallace exercised his right in the Buy-Sell Provision under the terms of the WBDP Agreement, offering Bajjali approximately $200,000 for Bajjali's 50% ownership interest in WBDP (the "Buy-Sell Offer"). Under the terms of the Buy-Sell Provision, within 45 days of the Buy-Sell Offer, Bajjali was obligated to accept the offer to sell or in turn offer to purchase Wallace's 50% for $200,000.

42.     Bajjali refused to comply with the terms of the Buy-Sell Provision. Bajjali became aware of the formation of ZT Development and contacted Badar to threaten that Bajjali would not comply with the WBDP Agreement unless he was given a $2,000,000 for his WBDP ownership interest. Bajjali further threatened to sue for interference.

43.     Due to Bajjali's refusal to comply with the terms of the Buy-Sell Provisions and his harassment of Badar, Wallace was unable to enter into the ZT Development partnership with ZT Wealth. Further, due to Bajjali's refusal to comply with the terms of the Buy-Sell provisions, Wallace was unable to comply with the terms of the Promissory Note and defaulted on the Promissory Note.

44.     During January 2015, the ZT Wealth Entities, specifically, Altus Healthcare Management L.P., Altus HMS II L.P., Altus Hospice Of Houston L.P., Altus Medical Equipment & Services L.P., Altus Radiation Billing & Management L.L.P., Altus Radiation Oncology (Baytown) L.P., Clarus Billing & Management L.P., Clarus Imaging (Baytown) L.P., Clarus Imaging (Beaumont) L.P., True View Realty Partners One L.P., True View Realty Partners Two L.P., True View Realty Partners Three L.P., ZT Group Business Center One (Pearland) L.P., And ZT Shadow Creek Partners L.P., redeemed Wallace's ZT Wealth Equity Interests (the "Redemptions" or individually "Redemption") for a total of $2,028.00 (the "Redemption Amount"). The individual redemptions are detailed in the chart attached hereto as Exhibit B and incorporated by reference. In December 2014, Badar had told Wallace that the ZT Wealth Equity Interests were worth at least $500,000. The result of the redemption was the transfer of the entirety of Wallace's interest in the ZT Wealth Equity Interests (the "Redemption Transfers" or individually "Redemption Transfer").

45.     After the Redemption Transfers, Wallace was left owing the balance of the Promissory Note, less the Redemption Amount, without any collateral.

46.     On information and belief, some or all of the Redemption Transfers were subsequently transferred by the Defendants Altus Healthcare Management L.P., Altus HMS II L.P., Altus Hospice of Houston L.P., Altus Medical Equipment Services L.P., Altus Radiation Billing & Management L.L.P., Altus Radiation Oncology (Baytown) L.P., Clarus Billing & Management L.P., Clarus Imaging (Baytown), L.P., Clarus Imaging (Beaumont), L.P., True View Realty Partners One L.P., True View Realty Partners Two L.P., True View Realty Partners Three L.P., ZT Group Business Center One (Pearland) L.P., and ZT Shadow Creek Partners L.P. to Defendant Badar (the "Subsequent Transfers").

## COUNT I
### Breach of Contract

47.     Plaintiff re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

48.     Defendant Bajjali and the Debtor were parties to the WBDP Agreement.

49.     Debtor performed all of its obligations under the WBDP Agreement to exercise the Buy-Sell Provision.

50.     Defendant Bajjali was obligated under the WBDP Agreement to comply with the Buy-Sell Provision in the WBDP Agreement.

51.     Bajjali breached the contract by failing to comply with the Buy-Sell Provision in the WBDP Agreement.

52.     Bajjali's breach of the contract directly and proximately caused damages to Plaintiff, including lost opportunities.

53.     Plaintiff is entitled to and seeks damages in an amount of $2,000,000.00 or in such other amount as may be proved at trial.

54.     **Attorney fees**.  The WBDP Agreement is subject to Texas law.  Under Texas law and the terms of the WBDP Agreement, Plaintiff is entitled to and seeks reasonable and necessary attorney fees because this is a suit for breach of a contract.

## COUNT II
### Tortious Interference with Prospective Economic Advantage

55.     Plaintiff re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

56.     Plaintiff had a prospective contractual relationship with ZT Wealth to enter into a partnership to form ZT Development.

57.     Defendant Bajjali was aware of the Plaintiff's prospective relationship with ZT Wealth.

58.     Defendant Bajjali intended to prevent the Plaintiff's prospective relationship with ZT Wealth for his own benefit and to the detriment of Plaintiff.

59.     Defendant Bajjali's actions to interfere with the Plaintiff's prospective relationship with ZT Wealth were not privileged, were in bad faith, and were intended to deprive Plaintiff of a business opportunity for the benefit of the Defendant.

60.     Plaintiff suffered actual harm as a result of the Defendant's conduct.

61.     Defendant's conduct was the actual and proximate cause of the demise of Plaintiff's prospective relationship with ZT Wealth.

62.     Plaintiff suffered damages from Defendant's conduct in such amount as may be proved at trial.

63.     Plaintiff is entitled to punitive damages for Defendant's tortious conduct.

<u>**COUNT III**</u>
**Avoidance and Recovery Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) & 550**

64.     Plaintiff re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

65.     The Redemption Transfers were made within two years of the Plaintiff having filed a petition for relief under chapter 7 of the Bankruptcy Code on March 24, 2015.

66.     The Redemption Transfers constituted one or more transfers of property of the Debtor to Defendant ZT Wealth.

67.     Debtor received less than reasonably equivalent value in exchange for the Redemption Transfers.

68.     Debtor was insolvent on the date of the Redemption Transfers.

69.     As a result of the foregoing, pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee is entitled to a judgment against the Defendant ZT Wealth: (a) avoiding the Redemption Transfers made within two years of the Petition Date and (b) requiring the Defendant ZT Wealth to return the Redemption transfers or the value thereof, to the Trustee for the benefit of the Wallace estate.

<u>**COUNT IV**</u>
**Avoidance and Recovery Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) & 550**

70.     Plaintiff re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

71.     The Altus Healthcare Management LP Redemption Transfer was made within two years of the Plaintiff having filed a petition for relief under chapter 7 of the Bankruptcy Code on March 24, 2015.

72.     The Altus Healthcare Management LP Redemption Transfer constituted one or more transfers of property of the Debtor to Defendant Altus Healthcare Management LP.

73.     Debtor received less than reasonably equivalent value in exchange for the Altus Healthcare Management LP Redemption Transfer.

74.     Debtor was insolvent on the date of the Altus Healthcare Management LP Redemption Transfer.

75.     As a result of the foregoing, pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee is entitled to a judgment against the Defendant Altus Healthcare Management LP: (a) avoiding the Altus Healthcare Management LP Redemption Transfer made within two years of the Petition Date and (b) requiring the Defendant Altus Healthcare Management LP to return the Altus Healthcare Management LP Redemption Transfer or the value thereof, to the Trustee for the benefit of the Wallace estate.

<u>COUNT V</u>

**Avoidance and Recovery Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) & 550**

76.     Plaintiff re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

77.     The Altus HMS II LP Redemption Transfer was made within two years of the Plaintiff having filed a petition for relief under chapter 7 of the Bankruptcy Code on March 24, 2015.

78.     The Altus HMS II LP Redemption Transfer constituted one or more transfers of property of the Debtor to Defendant Altus HMS II LP.

79.     Debtor received less than reasonably equivalent value in exchange for the Altus HMS II LP Redemption Transfer.

80.     Debtor was insolvent on the date of the Altus HMS II LP Redemption Transfer.

81.     As a result of the foregoing, pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee is entitled to a judgment against the Defendant Altus HMS II LP: (a) avoiding the Altus HMS II LP Redemption Transfer made within two years of the Petition Date and (b) requiring the Defendant Altus HMS II LP to return the Altus HMS II LP Redemption Transfer or the value thereof, to the Trustee for the benefit of the Wallace estate.

<u>COUNT VI</u>

**Avoidance and Recovery Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) & 550**

82.     Plaintiff re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

83.     The Altus Hospice of Houston LP Redemption Transfer was made within two years of the Plaintiff having filed a petition for relief under chapter 7 of the Bankruptcy Code on March 24, 2015.

84.     The Altus Hospice of Houston LP Redemption Transfer constituted one or more transfers of property of the Debtor to Defendant Altus Hospice of Houston LP.

85.     Debtor received less than reasonably equivalent value in exchange for the Altus Hospice of Houston LP Redemption Transfer.

86.     Debtor was insolvent on the date of the Altus Hospice of Houston LP Redemption Transfer.

87.     As a result of the foregoing, pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee is entitled to a judgment against the Defendant Altus Hospice of Houston LP: (a) avoiding the Altus Hospice of Houston LP Redemption Transfer made within two years of the Petition Date and (b) requiring the Defendant Altus Hospice of Houston LP to return the Altus Hospice of Houston LP Redemption Transfer or the value thereof, to the Trustee for the benefit of the Wallace estate.

## <u>COUNT VII</u>
**Avoidance and Recovery Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) & 550**

88.     Plaintiff re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

89.     The Altus Medical Equipment Services LP Redemption Transfer was made within two years of the Plaintiff having filed a petition for relief under chapter 7 of the Bankruptcy Code on March 24, 2015.

90.     The Altus Medical Equipment Services LP Redemption Transfer constituted one or more transfers of property of the Debtor to Defendant Altus Medical Equipment Services LP.

91.     Debtor received less than reasonably equivalent value in exchange for the Altus Medical Equipment Services LP Redemption Transfer.

92.     Debtor was insolvent on the date of the Altus Medical Equipment Services LP Redemption Transfer.

93.     As a result of the foregoing, pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee is entitled to a judgment against the Defendant Altus Medical Equipment Services LP: (a) avoiding the Altus Medical Equipment Services LP Redemption Transfer made within two years of the Petition Date and (b) requiring the Defendant Altus Medical Equipment Services LP to return the Altus Medical Equipment Services LP Redemption Transfer or the value thereof, to the Trustee for the benefit of the Wallace estate.

## COUNT VIII
### Avoidance and Recovery Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) & 550

94.     Plaintiff re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

95.     The Altus Radiation Billing & Management LLP Redemption Transfer was made within two years of the Plaintiff having filed a petition for relief under chapter 7 of the Bankruptcy Code on March 24, 2015.

96.     The Altus Radiation Billing & Management LLP Redemption Transfer constituted one or more transfers of property of the Debtor to Defendant Altus Radiation Billing & Management LLP.

97.     Debtor received less than reasonably equivalent value in exchange for the Altus Radiation Billing & Management LLP Redemption Transfer.

98.     Debtor was insolvent on the date of the Altus Radiation Billing & Management LLP Redemption Transfer.

99.     As a result of the foregoing, pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee is entitled to a judgment against the Defendant Altus Radiation Billing & Management LLP: (a)

avoiding the Altus Radiation Billing & Management LLP Redemption Transfer made within two years of the Petition Date and (b) requiring the Defendant Altus Radiation Billing & Management LLP to return the Altus Radiation Billing & Management LLP Redemption Transfer or the value thereof, to the Trustee for the benefit of the Wallace estate.

<u>COUNT IX</u>
**Avoidance and Recovery Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) & 550**

100.    Plaintiff re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

101.    The Altus Radiation Oncology (Baytown) LP Redemption Transfer was made within two years of the Plaintiff having filed a petition for relief under chapter 7 of the Bankruptcy Code on March 24, 2015.

102.    The Altus Radiation Oncology (Baytown) LP Redemption Transfer constituted one or more transfers of property of the Debtor to Defendant Altus Radiation Oncology (Baytown) LP.

103.    Debtor received less than reasonably equivalent value in exchange for the Altus Radiation Oncology (Baytown) LP Redemption Transfer.

104.    Debtor was insolvent on the date of the Altus Radiation Oncology (Baytown) LP Redemption Transfer.

105.    As a result of the foregoing, pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee is entitled to a judgment against the Defendant Altus Radiation Oncology (Baytown) LP: (a) avoiding the Altus Radiation Oncology (Baytown) LP Redemption Transfer made within two years of the Petition Date and (b) requiring the Defendant Altus Radiation Oncology (Baytown) LP to return the Altus Radiation Oncology (Baytown) LP Redemption Transfer or the value thereof, to the Trustee for the benefit of the Wallace estate.

<u>COUNT X</u>
**Avoidance and Recovery Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) & 550**

106.    Plaintiff re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

107.    The Clarus Billing & Management LP Redemption Transfer was made within two years of the Plaintiff having filed a petition for relief under chapter 7 of the Bankruptcy Code on March 24, 2015.

108.    The Clarus Billing & Management LP Redemption Transfer constituted one or more transfers of property of the Debtor to Defendant Clarus Billing & Management LP.

109.    Debtor received less than reasonably equivalent value in exchange for the Clarus Billing & Management LP Redemption Transfer.

110.    Debtor was insolvent on the date of the Clarus Billing & Management LP Redemption Transfer.

111.    As a result of the foregoing, pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee is entitled to a judgment against the Defendant Clarus Billing & Management LP: (a) avoiding the Clarus Billing & Management LP Redemption Transfer made within two years of the Petition Date and (b) requiring the Defendant Clarus Billing & Management LP to return the Clarus Billing & Management LP Redemption Transfer or the value thereof, to the Trustee for the benefit of the Wallace estate.

<u>COUNT XI</u>
**Avoidance and Recovery Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) & 550**

112.    Plaintiff re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

113. The Clarus Imaging (Baytown) LP Redemption Transfer was made within two years of the Plaintiff having filed a petition for relief under chapter 7 of the Bankruptcy Code on March 24, 2015.

114. The Clarus Imaging (Baytown) LP Redemption Transfer constituted one or more transfers of property of the Debtor to Defendant Clarus Imaging (Baytown) LP.

115. Debtor received less than reasonably equivalent value in exchange for the Clarus Imaging (Baytown) LP Redemption Transfer.

116. Debtor was insolvent on the date of the Clarus Imaging (Baytown) LP Redemption Transfer.

117. As a result of the foregoing, pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee is entitled to a judgment against the Defendant Clarus Imaging (Baytown) LP: (a) avoiding the Clarus Imaging (Baytown) LP Redemption Transfer made within two years of the Petition Date and (b) requiring the Defendant Clarus Imaging (Baytown) LP to return the Clarus Imaging (Baytown) LP Redemption Transfer or the value thereof, to the Trustee for the benefit of the Wallace estate.

## <u>COUNT XII</u>
## Avoidance and Recovery Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) & 550

118. Plaintiff re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

119. The Clarus Imaging (Beaumont) LP Redemption Transfer was made within two years of the Plaintiff having filed a petition for relief under chapter 7 of the Bankruptcy Code on March 24, 2015.

120. The Clarus Imaging (Beaumont) LP Redemption Transfer constituted one or more transfers of property of the Debtor to Defendant Clarus Imaging (Beaumont) LP.

121.    Debtor received less than reasonably equivalent value in exchange for the Clarus Imaging (Beaumont) LP Redemption Transfer.

122.    Debtor was insolvent on the date of the Clarus Imaging (Beaumont) LP Redemption Transfer.

123.    As a result of the foregoing, pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee is entitled to a judgment against the Defendant Clarus Imaging (Beaumont) LP: (a) avoiding the Clarus Imaging (Beaumont) LP Redemption Transfer made within two years of the Petition Date and (b) requiring the Defendant Clarus Imaging (Beaumont) LP to return the Clarus Imaging (Beaumont) LP Redemption Transfer or the value thereof, to the Trustee for the benefit of the Wallace estate.

## COUNT XIII
### Avoidance and Recovery Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) & 550

124.    Plaintiff re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

125.    The True View Realty Partners One LP Redemption Transfer was made within two years of the Plaintiff having filed a petition for relief under chapter 7 of the Bankruptcy Code on March 24, 2015.

126.    The True View Realty Partners One LP Redemption Transfer constituted one or more transfers of property of the Debtor to Defendant True View Realty Partners One LP.

127.    Debtor received less than reasonably equivalent value in exchange for the True View Realty Partners One LP Redemption Transfer.

128.    Debtor was insolvent on the date of the True View Realty Partners One LP Redemption Transfer.

129.    As a result of the foregoing, pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee is entitled to a judgment against the Defendant True View Realty Partners One LP: (a) avoiding the True View Realty Partners One LP Redemption Transfer made within two years of the Petition Date and (b) requiring the Defendant True View Realty Partners One LP to return the True View Realty Partners One LP Redemption Transfer or the value thereof, to the Trustee for the benefit of the Wallace estate.

**COUNT XIV**
**Avoidance and Recovery Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) & 550**

130.    Plaintiff re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

131.    The True View Realty Partners Two LP Redemption Transfer was made within two years of the Plaintiff having filed a petition for relief under chapter 7 of the Bankruptcy Code on March 24, 2015.

132.    The True View Realty Partners Two LP Redemption Transfer constituted one or more transfers of property of the Debtor to Defendant True View Realty Partners Two LP.

133.    Debtor received less than reasonably equivalent value in exchange for the True View Realty Partners Two LP Redemption Transfer.

134.    Debtor was insolvent on the date of the True View Realty Partners Two LP Redemption Transfer.

135.    As a result of the foregoing, pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee is entitled to a judgment against the Defendant True View Realty Partners Two LP: (a) avoiding the True View Realty Partners Two LP Redemption Transfer made within two years of the Petition Date and (b) requiring the Defendant True View Realty Partners Two LP to return the

True View Realty Partners Two LP Redemption Transfer or the value thereof, to the Trustee for the benefit of the Wallace estate.

## COUNT XV
### Avoidance and Recovery Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) & 550

136.    Plaintiff re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

137.    The True View Realty Partners Three LP Redemption Transfer was made within two years of the Plaintiff having filed a petition for relief under chapter 7 of the Bankruptcy Code on March 24, 2015.

138.    The True View Realty Partners Three LP Redemption Transfer constituted one or more transfers of property of the Debtor to Defendant True View Realty Partners Three LP.

139.    Debtor received less than reasonably equivalent value in exchange for the True View Realty Partners Three LP Redemption Transfer.

140.    Debtor was insolvent on the date of the True View Realty Partners Three LP Redemption Transfer.

141.    As a result of the foregoing, pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee is entitled to a judgment against the Defendant True View Realty Partners Three LP: (a) avoiding the True View Realty Partners Three LP Redemption Transfer made within two years of the Petition Date and (b) requiring the Defendant True View Realty Partners Three LP to return the True View Realty Partners Three LP Redemption Transfer or the value thereof, to the Trustee for the benefit of the Wallace estate.

## COUNT XVI
**Avoidance and Recovery Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) & 550**

142.    Plaintiff re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

143.    The ZT Group Business Center One (Pearland) LP Redemption Transfer was made within two years of the Plaintiff having filed a petition for relief under chapter 7 of the Bankruptcy Code on March 24, 2015.

144.    The ZT Group Business Center One (Pearland) LP Redemption Transfer constituted one or more transfers of property of the Debtor to Defendant ZT Group Business Center One (Pearland) LP.

145.    Debtor received less than reasonably equivalent value in exchange for the ZT Group Business Center One (Pearland) LP Redemption Transfer.

146.    Debtor was insolvent on the date of the ZT Group Business Center One (Pearland) LP Redemption Transfer.

147.    As a result of the foregoing, pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee is entitled to a judgment against the Defendant ZT Group Business Center One (Pearland) LP: (a) avoiding the ZT Group Business Center One (Pearland) LP Redemption Transfer made within two years of the Petition Date and (b) requiring the Defendant ZT Group Business Center One (Pearland) LP to return the ZT Group Business Center One (Pearland) LP Redemption Transfer or the value thereof, to the Trustee for the benefit of the Wallace estate.

## COUNT XVII
**Avoidance and Recovery Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) & 550**

148.    Plaintiff re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

149.    The ZT Shadow Creek Partners LP Redemption Transfer was made within two years of the Plaintiff having filed a petition for relief under chapter 7 of the Bankruptcy Code on March 24, 2015.

150.    The ZT Shadow Creek Partners LP Redemption Transfer constituted one or more transfers of property of the Debtor to Defendant ZT Shadow Creek Partners LP.

151.    Debtor received less than reasonably equivalent value in exchange for the ZT Shadow Creek Partners LP Redemption Transfer.

152.    Debtor was insolvent on the date of the ZT Shadow Creek Partners LP Redemption Transfer.

153.    As a result of the foregoing, pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee is entitled to a judgment against the Defendant ZT Shadow Creek Partners LP: (a) avoiding the ZT Shadow Creek Partners LP Redemption Transfer made within two years of the Petition Date and (b) requiring the Defendant ZT Shadow Creek Partners LP to return the ZT Shadow Creek Partners LP Redemption Transfer or the value thereof, to the Trustee for the benefit of the Wallace estate.

## COUNT XVIII
### Avoidance and Recovery Subsequent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) & 550

154.    Plaintiff re-alleges and fully incorporates the allegations in the preceding paragraphs as if fully set forth herein.

155.    The Redemption Transfers are avoidable under section 548 of the Bankruptcy Code.

156.    On information and belief, some or all of the Redemption Transfers were subsequently transferred by the Defendants Altus Healthcare Management L.P., Altus HMS II L.P., Altus Hospice of Houston L.P., Altus Medical Equipment Services L.P., Altus Radiation

Billing & Management L.L.P., Altus Radiation Oncology (Baytown) L.P., Clarus Billing & Management L.P., Clarus Imaging (Baytown), L.P., Clarus Imaging (Beaumont), L.P., True View Realty Partners One L.P., True View Realty Partners Two L.P., True View Realty Partners Three L.P., ZT Group Business Center One (Pearland) L.P., and ZT Shadow Creek Partners L.P. to Defendant Badar (as previously defined, the Subsequent Transfers).

157.    Each of the Subsequent Transfers was made directly or indirectly to Defendant Badar.

158.    Defendant Badar is the immediate or mediate transferee of the Subsequent Transfers from the Defendants Altus Healthcare Management L.P., Altus HMS II L.P., Altus Hospice of Houston L.P., Altus Medical Equipment Services L.P., Altus Radiation Billing & Management L.L.P., Altus Radiation Oncology (Baytown) L.P., Clarus Billing & Management L.P., Clarus Imaging (Baytown), L.P., Clarus Imaging (Beaumont), L.P., True View Realty Partners One L.P., True View Realty Partners Two L.P., True View Realty Partners Three L.P., ZT Group Business Center One (Pearland) L.P., and ZT Shadow Creek Partners L.P.

159.    As a result of the foregoing and the avoidance of the Redemption Transfers, pursuant to sections 548(a)(1)(B) & 550 of the Bankruptcy Code, the Trustee is entitled to a judgment against Defendant Badar: (a) avoiding the Subsequent Transfers and (b) requiring the Defendant Badar to return the Subsequent Transfers or the value thereof, to the Trustee for the benefit of the Wallace estate.

## **RESERVATION OF RIGHTS**

160.    The Trustee hereby specifically reserves the right to bring any and all other causes of action that it may maintain against the Defendants including, without limitation, causes of

action arising out of the same transaction(s) set forth herein, to the extent discovery in this action

or further investigation by the Trustee reveals such further cause of action.

## <u>PRAYER</u>

WHEREFORE, the Trustee respectfully requests that the Court enter judgment for, or

make findings of fact and conclusions of law in support of, the following relief:

a. Enter an order of judgment awarding the Plaintiff its actual and compensatory damages caused by Bajjali's violation of the WBDP Agreement and tortious interference with the Debtor's prospective business relations;

b. Enter an order of judgment awarding the Plaintiff such punitive damages as the evidence supports;

c. Enter an order of judgment avoiding each of the Redemption Transfers under 11 U.S.C. § 548(a)(1)(B);

d. Enter an order of judgment avoiding each of the Subsequent Transfers under 11 U.S.C. § 548(a)(1)(B);

e. Enter an order of judgment awarding the Plaintiff its costs and reasonable attorneys' fees incurred herein; and

f. Grant the Plaintiff such other and further relief beneficial to the Plaintiff as the Court deems appropriate and just under the circumstances.

*[Remainder of page left intentionally blank]*

Dated:  March 10, 2016

Respectfully submitted,

DIAMOND MCCARTHY LLP

By:    */s/ William Hotze*
       Christopher R. Murray
       TBA No. 24081057
       cmurray@diamondmccarthy.com
       William Hotze
       TBA No. 24087754
       whotze@diamondmccarthy.com
       909 Fannin Street, Suite 1500
       Houston, TX 77010
       Tel. 713-333-5100
       Fax. 713-333-5199

*Counsel to Chapter 7 Trustee Rodney D. Tow*